## GROSFIELD ET AL. *v.* UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 62. Argued January 4, 1928.—Decided April 9, 1928.

1. The purpose of the provision of the National Prohibition Act authorizing an injunction against occupation and use of premises where liquor has been unlawfully manufactured, etc., is not punitive, but preventive. P. 497.
2. In a suit under this section against the owner of leased premises based on illegal manufacture of liquor by the tenant, lack of criminal participation by the owner is not a defence; nor is the fact that the tenant was ousted and the illegal use ended before the

decree conclusive against granting the injunction, if the conduct and statements of the owner furnish reasonable ground for apprehending a repetition of the use.    P. 498.

3. After the injunction has been decreed, power remains in the District Court to permit the premises to be occupied or used upon the giving of a bond with sufficient surety in the amount and upon the conditions prescribed by the statute.    P. 499.

District Court affirmed.

REVIEW of a decree of the District Court enjoining the use, for the period of one year, of premises owned by Grosfield and Caplis, the defendants in a suit brought by the United States under the Prohibition Act.    The case first reached this Court through questions propounded by the Circuit Court of Appeals, to which it had been appealed.    This Court ordered up the entire record.

*Messrs. Harold Goodman* and *Edwin R. Monnig* submitted for Grosfield and Caplis.

*Solicitor General Mitchell,* with whom *Assistant Attorney General Mabel Walker Willebrandt* and *Mr. Norman J. Morrison,* Attorney in the Department of Justice, were on the brief, for the United States.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This case came here from the court of appeals on certificate submitting certain questions upon which that court desired instruction.    Upon an order requiring it, the entire record has been sent up for consideration.    Judicial Code, § 239, as amended February 13, 1925, by c. 229, 43 Stat. 936, 938.

Suit was brought by the United States on March 11, 1925, in the federal district court for the Southern Division of the Eastern District of Michigan, against Grosfield and Caplis, owners, and Silverman, tenant, to enjoin the

use of certain premises for the manufacture or sale of intoxicating liquor and to close such premises, as a common nuisance, for a period of one year. On March 30th, Grosfield and Caplis filed an answer, among other things denying that the premises were a common nuisance, and alleging that, as to whether intoxicating liquor was sold, kept or bartered upon the premises, they had no knowledge or information sufficient to form a belief; that the first information they received that the premises were used for illegal purposes was contained in a newspaper account of a raid [made January 17, 1925] containing the information that various appliances for the manufacture of intoxicating liquor had been found and seized; that Silverman upon being spoken to declared that there would be no violations of law upon the premises, that everything of an unlawful nature had been taken out, and a lease of the premises was being negotiated for the storage of paper; that, thereafter, upon the receipt of a copy of the bill of complaint, steps were taken by defendants to terminate Silverman's tenancy; and that they will proceed to oust him from the premises. On July 10, 1925, after a hearing, the bill was dismissed as to Silverman and a decree entered against Grosfield and Caplis in accordance with the prayer. No effort appears to have been made by those defendants to secure an order from the district court allowing them to give a bond so as to permit the continued occupation and use of the premises. The only question for our consideration is whether the evidence submitted to the district court is sufficient to justify the decree.

By § 21, Title II, of the National Prohibition Act, c. 85, 41 Stat. 305, 314, any room, house, etc., where intoxicating liquor is manufactured, sold, kept, or bartered in violation of that title, is declared to be a common nuisance. By § 22, it is provided that an action to enjoin such nuisance may be brought in the name of the United States,

to be tried as an action in equity; that it shall not be
necessary for the court to find that the property involved
was being unlawfully used at the time of the hearing, but
if the material allegations of the petition are found to be
true the court shall order that no liquor shall be manufac-
tured, sold, etc., in such room, house, etc.; that upon
judgment abating the nuisance the court may order that
the premises shall not be occupied or used for one year
thereafter, but may in its discretion permit them to be
occupied or used upon the giving of a bond with sufficient
surety in the sum of not less than $500 nor more than
$1,000 conditioned that intoxicating liquor shall not there-
after be manufactured, sold, etc.

Evidence was introduced by the Government to the
effect that on January 17, 1925, nearly two months before
this suit was brought, police officers entered the premises
involved (then in Silverman's possession) and there found
and seized two 300-gallon copper stills in operation, two
copper tanks and other appliances used for the purpose
of manufacturing intoxicating liquor, 8,500 gallons of
sugar mash, and 60 gallons of whiskey distillate. Gros-
field, who was the only witness for the defendants, testi-
fied: " I rented these premises to Silverman for the pur-
pose of storing hay and straw. I had no knowledge of
any illegal use of the premises until this case. I have
caused the tenancy of Silverman to be terminated and
have rented the entire rear part of the building to the
Boston Paper Company for the storage of paper." Being
asked by the court: " You did not remove this tenant be-
fore the institution of these proceedings?" he answered:
" I had no knowledge that the premises were used in this
way until these proceedings were started."

Considering the evidence in connection with the sworn
answer of the defendants, we cannot say that the decree
is without adequate support. The purpose of the pro-
vision of the statute authorizing an injunction against

318°—28——32

occupancy and use is not punitive but preventive, *Murphy* v. *United States,* 272 U. S. 630, 632; and it is no answer to the suit to say that the owner did not participate in the criminal act of the tenant. That the tenant may have been ousted and the illegal use of the premises ended before the decree is not conclusive, if the evidence furnish reasonable ground for apprehending a repetition of such use. *United States* v. *Pepe,* 12 F. (2d) 985, 986; *Schlieder* v. *United States,* 11 F. (2d) 345, 347; *United States* v. *Boynton,* 297 Fed. 261, 267–268; *Grossman* v. *United States,* 280 Fed. 683, 685–686. The evidence discloses that the illegal use of the premises was discovered nearly two months prior to the bringing of this suit, with full knowledge of which discovery defendants fairly may be charged, having read a newspaper account of the raid and talked with Silverman about it. When the answer was filed, although two and one-half months had elapsed, Silverman was still in possession, and the answer contains the averment only that steps had been taken to terminate his tenancy and a promise that defendants would proceed to oust him. The tenancy was from month to month. The circumstances called for prompt action; and the failure of the owners of the premises to take any steps to remove the offending tenant until after the suit had been brought against them evinces a lack of concern not easily reconcilable with a real desire upon their part to make sure that the evil use of their property would not be repeated. Grosfield's statement—made in response to the interrogative suggestion of the court that the tenant was not removed before the institution of these proceedings— that he had no knowledge that the premises were being improperly used until the proceedings were begun, is inconsistent with the averment in the answer that he had read the newspaper account in respect of the unlawful use of the premises disclosed by the raid of January 17th.

That defendants, long before the suit against them was begun, knew of the tenant's violation of law, is not open to reasonable dispute; and their delay until after suit to take steps to get rid of him, in the face of his criminal use of the premises, well might be attributed to a lack of good faith on their part.  Nor is it unfair to say that their failure to act until complaint was served upon them, evidences a surrender to the unavoidable rather than a voluntary effort to prevent a renewal of the nuisance.  The trial judge who saw Grosfield and heard his testimony was better able to pass upon his credibility and trustworthiness than are we.

Upon consideration of all the circumstances, we find no ground for disturbing the conclusion upon which the decree must rest, namely, that the premises ought to be closed for a period long enough to end the probability of a recurrence of their unlawful use.  We are the more content with this conclusion, since it is still within the power of the district court to permit the premises to be occupied or used upon the giving of a bond with sufficient surety in the amount and upon the conditions prescribed by the statute.  See *United States* v. *Pepe, supra; Schlieder* v. *United States, supra,* p. 347.

*Decree affirmed.*