## UNITED STATES v. DIEGO et al.

District Court, S. D. Florida. March 13, 1929.

No. 555.

William M. Gober, U. S. Atty., of Tampa, Fla., and William A. Paisley, Asst. U. S. Atty., of Jacksonville, Fla., for the United States.

Julian L. Hazard and W. K. Zewadski, Jr., both of Tampa, Fla., for defendants.

JONES, District Judge. This is a suit filed by the United States to enjoin and abate a nuisance alleged in the bill. of complaint to exist upon certain described premises in the city of Tampa, Fla., known as Rubin's Restaurant. The owner of the premises and Joe and Manuel Rubin, alleged to be the proprietors of the restaurant, are the parties defendant. The suit is brought under the provisions of sections 21 and 22, title 2 of the National Prohibition Act (27 USCA §§ 33, 34).

The bill of complaint, after describing the premises, alleges that the restaurant thereon conducted is fully equipped "with a bar and other saloon fixtures, including whisky and beer drinking glasses, tables, * * * and the usual bar, saloon and restaurant equipment, fixtures, and supplies, * * * and is used and maintained as a place where intoxicating liquors * * * are kept, sold, and bartered, * * * and· that the said premises and all intoxicating liquor and property kept and used in maintaining same, constitute and are a common nuisance," and that the defendants named above "unlawfully kept, bartered, and sold on the premises * * * certain intoxicating liquors. * * *" The bill then prays for a temporary restraining order (which was issued), for an order abating the alleged nuisance, and prohibiting the use and occupancy of the said premises for a period of one year.

The defendants filed their joint and several answer, denying all the above-quoted allegations of the bill, and averring the truth to be that said premises are equipped with restaurant fixtures only, and that same are used in the conduct of a "high-class, respectable restaurant and eating establishment, catering to family trade and other high-class,

orderly, and law-abiding patronage," and that no law has been or is being violated; that no intoxicating liquors are "kept, bartered, or sold on said premises, and no nuisance exists or has existed thereon."

The testimony upon the issues thus joined has been taken, and the case now comes up for final hearing.

The testimony of the government is to the effect that in October or November, 1928, a witness, employed as an "under cover" man by the police of the city of Tampa, purchased on three or four occasions within so many days a bottle of intoxicating liquor (sometimes a pint, sometimes a half-pint) from some one (not a defendant in this case) who appeared to be an employee in this restaurant. The purchases were made in the kitchen of said restaurant, not in the presence of the defendants, or either of them; but the money in payment was given to the defendant Joe Rubin in the hallway, or some other part of the restaurant, in the same manner as food was paid for.

■ Police officers testified that complaints had been made to them that liquor was being sold at these premises, but were unable to give the names of any of the complainants; most of the complaints being made anonymously over the telephone. These complaints were not borne out by any investigations made by these officers; one of them, Policeman Crawford, testifying that on several occasions, after receiving these reports or complaints, he had visited these premises and found no liquor or other law violations. Crawford testified that, in visiting this restaurant at the time of his investigations, so far as he could discover, it was conducted as a "high-class, law-abiding restaurant, catering to the public, to sell food, and not liquor."

The other officer (Taylor by name) testified, over the objection of defendants (which objection, I think was well taken), that more than a year previous to the filing of this bill he had executed a search warrant at these premises, and found quite a quantity of assorted liquors in an attic over the restaurant; but he did not know to whom it belonged. He also testified that he served some search warrants there several days later and found no liquor.

All the witnesses for the government agreed there was no bar or bar fixtures on the premises, no drinking of liquor thereon, and so far as each knew the place was conducted as a first-class restaurant.

The defendants Joe and Manuel Rubin testified, each denying any knowledge of the sales of liquor testified to by the government

witnesses, denied any interest in the liquor said to have been seized more than a year previous to the filing of this suit, and said that it was not found in or on the portion of the premises occupied by them. They testified their restaurant was conducted in a high-class manner and catered to the best people of Tampa.

The evidence, therefore, shows that, aside from the three or four sales of liquor testified to by this "under cover" policeman, and corroborated by a man working with him, there is nothing to support the allegations of the bill. The allegations as to maintaining a bar and bar equipment upon these premises were proven to be without foundation by the government's own witnesses, and no liquor was found thereon.

■ This is not a criminal action, to punish some one for a violation of the National Prohibition Act, but is a civil action, to abate an alleged nuisance; the purpose of section 22, title 2, of said act (under which this suit is brought), being "preventive and not punitive." Grosfield v. United States, 276 U. S. 494, 48 S. Ct. 329, 72 L. Ed. 670; Murphy v. United States, 272 U. S. 630, 47 S. Ct. 218, 71 L. Ed. 446. The sole question to be determined, therefore, is: Does the evidence of these three or four sales of intoxicating liquor, under the conditions and surroundings in which they were made, justify the conclusion that a nuisance existed as alleged in the bill?

■ There is some conflict in the decisions as to just what constitutes a nuisance under this section, but the better considered opinions hold it is a question of fact in each case.

"A single sale or a brief possession, when surrounded by facts showing that the place where the sale was made or possession had was maintained for keeping and selling intoxicating liquor, is sufficient to sustain a charge of maintaining a statutory nuisance." Hohenadel Brewing Co. v. United States (C. C. A.) 295 F. 489, Singer v. United States (C. C. A.) 288 F. 695.

"The sales shown by the government's evidence, considered in connection with possession by the appellants of liquor upon the premises [disclosed by searches on two other occasions], are sufficient to support the decree." Denapolis v. United States (C. C. A.) 3 F.(2d) 722.

"* * * The number of sales of liquor made at a named place does not alone establish the existence of a nuisance. One sale or three sales when regarded in connection with the appurtenant circumstances may or may not, in the mind of the judge who has the re-

sponsibility of decision, determine the fact of nuisance." United States v. Ward (C. C. A.) 6 F.(2d) 182.

In other words, the word "sale," as used in section 21 of the act, must be considered in connection with the words "with which it is immediately associated," in determining whether or not a nuisance exists. Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548. ▇ Considering the instant case in the light of these decisions, and accepting the government's evidence as to the sales as true, have the necessary averments of the bill of complaint been proven, and do the facts as proven warrant the conclusion that a nuisance existed at these premises? I think not. There is a total lack of those "appurtenant circumstances" necessary to such a conclusion.

A final decree dismissing the bill of complaint will be entered.