UNITED STATES OF AMERICA, Respondent, vs. RICHARDS and another, Appellants.

*February 3—March 4, 1930.*

132

For the appellants there was a brief by *David Gardner, Jr.* of Platteville and *Stephens & Burns* of Cuba City, and oral argument by *E. E. Burns.*

For the respondent there was a brief by *Manfred S. Block,* district attorney of Grant county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Block* and *Mr. Messerschmidt.*

FRITZ, J.   The power of legislatures to declare premises where intoxicating liquor is unlawfully manufactured, kept, or sold to be public nuisances, and the equitable jurisdiction of courts, under as well as independently of statutory authorization, to abate such nuisances by injunction, without the right of trial by jury, has been frequently recognized and sustained. *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273; *State ex rel. Att'y Gen. v. Stoughton Club,* 163 Wis. 362, 365, 158 N. W. 93; *State ex rel. Att'y Gen. v. Thekan,* 184 Wis. 42, 198 N. W. 729; *State v. Zimmerman,* 317 Ill. 197, 148 N. E. 5; *Cowdery v. State,* 71 Kan. 450, 80 Pac. 953; 1 Woollen and Thornton, Law of Intoxicating Liquor, sec. 170. In *State ex rel. Att'y Gen. v. Thekan, supra,* which involved the granting of such relief against the owner of premises as well as against a lessee by whom the law had been violated, this court said:

"The importance of the various enactments prohibiting the manufacture and sale of intoxicating liquors for beverage purposes becomes apparent when we consider that the nation has seen fit to incorporate prohibition in the constitution by

the Eighteenth amendment. The public policy of the nation and of the various states has been declared in definite and unequivocal terms, not only by the Eighteenth amendment and the act of Congress in the passage of the Volstead Act, but by the various statutes on the subject passed by the legislatures of the different states." (Page 45.)

"Bearing in mind the constitutional provision and the statutes and the declarations of the courts on the subject of the prohibition of the liquor traffic, it is not surprising that the legislature of this state has seen fit to declare, by sec. 165.01, premises where intoxicating liquor is manufactured, kept, or sold in violation of law, public nuisances. Independent of the provisions of sub. (22) of sec. 165.01, in view of the public policy of the nation and of the state, the continued use of premises for the manufacture, sale, and possession of intoxicating liquors contrary to law would constitute such premises a public nuisance. (Page 46.)

"It appears to us that, independent of the provisions of sec. 3180a, a court of equity would have full power and jurisdiction not only to abate the nuisance complained of, but to prohibit also the use of premises for the sale of nonintoxicating beverages under a license, where the privilege is used as a mere subterfuge for the purpose of evading the law. The constitutional amendment and the various enforcement acts are designed to promote the public health. Considerations of the public health and welfare are superior to the rights of private property and so-called vested rights." (Pages 47, 48.)

"While the statute provides for a penalty on account of violation of the liquor laws, the enforcement of such penalty under the allegations of the complaint does not operate to eradicate the evil. The remedy under the criminal statute is inadequate, and, when such a situation arises, the majesty of the law can only be vindicated by a resort to an equitable proceeding." (Page 48.)

And in *State ex rel. Att'y Gen. v. Stoughton Club, supra,* this court said:

"Persons dealing in intoxicating liquors have no vested right in a jury trial in order to determine whether or not

their place of business is a public nuisance. For such purpose an action in equity constitutes due process of law." (Page 365.)

Likewise, it is well established that Congress has power, under the Eighteenth amendment of the federal constitution, to declare premises on which intoxicating liquor has been unlawfully manufactured, sold, kept, or bartered to be a public nuisance; and to provide that an action to enjoin such nuisance may be brought in the name of the United States, to be tried as an action in equity, in any court having equity jurisdiction, and that upon judgment abating the nuisance the court may order that the premises shall not be occupied or used for one year thereafter, or may, in its discretion, permit them to be occupied or used, only upon the giving of a bond conditioned that no violation of the liquor laws shall occur upon such premises (secs. 21, 22, title II, National Prohibition Act). *Lewinsohn v. U. S.* (C. C. A.) 278 Fed. 421, *certiorari* denied 258 U. S. 630, 66 Lawy. Ed. 800, 42 Sup. Ct. 463; *Remus v. U. S.* (C. C. A.) 291 Fed. 513; *Peter Hand Co. v. U. S.* (C. C. A.) 2 Fed. (2d) 449; *Denapolis v. U. S.* (C. C. A. 1925) 3 Fed. (2d) 722; *Kling v. U. S.* (C. C. A.) 8 Fed. (2d) 730, *certiorari* denied 269 U. S. 587, 70 Lawy. Ed. 426, 46 Sup. Ct. 203; *Schlieder v. U. S.* (C. C. A.) 11 Fed. (2d) 345; *Murphy v. U. S.* 272 U. S. 630, 47 Sup. Ct. 218; *Grosfield v. U. S.* 276 U. S. 494, 48 Sup. Ct. 329.

Sec. 22, title II, of the National Prohibition Act provides, in part, as follows:

"An action to enjoin any nuisance defined in this title [41 U. S. Stats. at Large, p. 305, ch. 85] may be brought in the name of the United States by the attorney general of the United States or by any United States attorney or any prosecuting attorney of any state or any subdivision thereof or by the commissioner or his deputies or assistants. Such action shall be brought and tried as an action in equity and

may be brought in any court having jurisdiction to hear and determine equity cases."

That state courts of general equity jurisdiction (which the trial court in the case at bar has) have concurrent jurisdiction with the federal courts of actions commenced by the United States under secs. 21 and 22 of title II of the National Prohibition Act for the abatement of public nuisances has been held by appellate courts in New York, Connecticut, Missouri, and California. In *Ex parte Gounis*, 304 Mo. 428, 263. S. W. 988, the court said:

"With respect to civil actions the jurisdiction of the state and federal courts may be concurrent. In cases arising under the constitution, laws, and treaties of the United States, if exclusive jurisdiction in the United States courts be neither express nor implied, 'the state courts have concurrent jurisdiction whenever, by their own constitution, they are competent to take it.' *Claflin v. Houseman*, 93 U. S. 130. . . .

"The injunction suit which gave rise to the present proceeding was bottomed on a federal statute. The petition in that cause recited that it was filed by the prosecuting attorney of St. Louis county 'pursuant to authority thereto granted by sec. 22, title II, National Prohibition Act, and for the purpose of enjoining and abating a certain public and common nuisance as defined by sec. 21, title II, of said act of Congress.' . . .

"The circuit courts of this state as courts of general equity jurisdiction have full power to enjoin the maintenance of a public nuisance which affects the health, morals, or safety of the community. And this is so whether the wrongs and injuries constituting such a nuisance are so denominated at common law or by statute. (Cases.) When, therefore, places in the state of Missouri where intoxicating liquor was manufactured or sold became, by virtue of the act of Congress, public nuisances, they could at that instant be suppressed by injunctions issued by the circuit courts of the state 'in the exercise of their ordinary, original, and rightful jurisdiction.' Consequently there can be little question but that the circuit court of St. Louis county had full jurisdic-

tion, so far as subject matter was concerned, of the action prosecuted in the name of the United States against the petitioner here." (Pages 439, 440.)

In *Carse v. Marsh*, 189 Cal. 743, 210 Pac. 257, the court said:

"The superior court of this state by the constitution of this state is given jurisdiction in equity, and hence it has jurisdiction by that provision. Such being the case, it cannot be disputed that the superior court of the county of San Diego had jurisdiction within the county to abate any nuisance existing within that county, whether it is declared to be a nuisance by an act of Congress or by the state legislature, or whether it is of such a character as would be a nuisance by common law. It matters not what power declares the thing to be a nuisance, providing it is done by some body having authority to act. Undoubtedly Congress has power under the Eighteenth amendment to declare any place wherein intoxicating liquor is manufactured, kept, sold, or bartered to be a common nuisance. The court has such jurisdiction to abate it, regardless of the authority which declares it to be a common nuisance. . . . The right of the district attorney to proceed in the name of the United States is given by the Volstead Act. There can be no doubt of the right of the United States to avail itself of the law officers of the state for the purpose of enforcing the act of Congress; consequently the case is properly brought in the name of the United States." See, also, *In re Brambini*, 192 Cal. 19, 218 Pac. 569.

To the same effect, see *U. S. v. Sumner*, 125 Misc. 658, 211 N. Y. Supp. 705, affirmed 216 App. Div. 782, 214 N. Y. Supp. 930; *U. S. v. Stevens*, 103 Conn. 7, 130 Atl. 249.

As to the nature and extent of the ultimate relief under sec. 22, title II, National Prohibition Act, that section provides:

"It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing, but on finding that the material allega-

tions of the petition are true, the court shall order that no liquors shall be manufactured, sold, bartered, or stored in such room, . . . or place, or any part thereof. And upon judgment of the court ordering such nuisance to be abated, the court may order that the room, . . . or place shall not be occupied or used for one year thereafter; but the court may, in its discretion, permit it to be occupied or used if the owner, lessee, tenant, or occupant thereof shall give bond with sufficient surety, to be approved by the court making the order, in the penal and liquidated sum of not less than $500 nor more than $1,000, payable to the United States, and conditioned that intoxicating liquor will not thereafter be manufactured, sold, bartered, kept, or otherwise disposed of therein or thereon, and that he will pay all fines, costs, and damages that may be assessed for any violation of this chapter upon said property."

Whenever the jurisdiction of a court of equity is invoked to abate a public nuisance, whether invoked under federal or state legislative enactments or independently thereof, the nature and extent of the relief is to be determined on considerations obtaining in actions in equity. As the purpose of statutes authorizing such relief is preventive and not punitive, the relief should not be more drastic than is probably, reasonably necessary, under the facts and circumstances of the case under consideration, to insure the abatement of the nuisance. Before any injunctional relief is granted, the facts and circumstances must reasonably warrant the conclusion that the usual deterrent of a fine or imprisonment, upon conviction for violation, probably will be inadequate to protect the public from a continuance of the nuisance. Where there is no reasonable ground to apprehend future unlawful use of the premises, there is no basis for an injunction prohibiting the use thereof for all purposes.

In *Schlieder v. U. S.* (C. C. A.), *supra,* the court said:

"The fundamental principle upon which sec. 22 depends for its validity is that it is intended to authorize the abatement of a nuisance by a suit in equity and to go no further.

If the section could be construed as warranting punishment for the offense or forfeiture of property as a penalty, it would be open to grave constitutional objections. (Cases.)

"It is the contention of the government that the allowance of bond is entirely in the discretion of the trial court. While this is so, the discretion of the judge must be exercised fairly and justly, in view of all the facts and circumstances of the case, and so as not to do an injustice to any innocent party. . . . Doubtless cases may arise in which the judge would be justified in not permitting the reopening of a building, if he finds that the owner has knowingly acquiesced in the operating of a nuisance; but in such case the probability of the nuisance continuing should be shown, and the proof should be clear and convincing. . . .

"In proceeding under the section the trial judge is vested with broad discretion, but not with the power to arbitrarily close the building for a year and refuse to the owner the right of bond. Regard must be had for all the facts and circumstances of the case, and if the owner is in good faith and the nuisance has in fact been abated, it is an abuse of discretion not to permit him to bond the property."

On the other hand:

"It is a matter of common knowledge . . . that the existence of a nuisance of this kind involves, not only the presence of intoxicating liquor, but also the habitual presence of those who come to the premises to sell and to purchase such liquor, and who necessarily assist, and participate in, the continued maintenance of such nuisance. The usual, if not inevitable, result is that the place acquires that 'probability that the old customers will resort to the old place,' which the law recognizes, in connection with a lawful business, as 'good will.' . . . So, when a place becomes a public nuisance because intoxicating liquor is there purchased, kept, and sold for beverage purposes, it establishes a reputation and acquires customers who will continue to frequent that location. This naturally and necessarily renders it unusually difficult to prevent further violations of the law in that place, with consequent continuation of the nuisance." *U. S. v. Boynton*, 297 Fed. 261, 267.

Consequently, when the proof establishes that an owner of premises, who has already failed to prevent their use as a public nuisance, probably will not succeed in that respect in the future, and that therefore it is probably, reasonably necessary to enjoin the occupancy or use of the premises for all purposes for one year after the entry of judgment, the injunction may go to that extent, even though the owner did not participate in the criminal acts of a tenant.

In *Grosfield v. U. S.* 276 U. S. 494, 48 Sup. Ct. 329, the court said:

"The purpose of the provision of the statute authorizing an injunction against occupancy and use is not punitive but preventive (*Murphy v. U. S.* 272 U. S. 630, 632, 47 Sup. Ct. 218); and it is no answer to the suit to say that the owner did not participate in the criminal act of the tenant. That the tenant may have been ousted and the illegal use of the premises ended before the decree is not conclusive, if the evidence furnish reasonable ground for apprehending a repetition of such use. *U. S. v. Pepe,* 12 Fed. (2d) 985, 986; *Schlieder v. U. S.* 11 Fed. (2d) 345, 347; *U. S. v. Boynton,* 297 Fed. 261, 267, 268; *Grossman v. U. S.* 280 Fed. 683, 685, 686. (Pages 497, 498.)

"Upon consideration of all the circumstances, we find no ground for disturbing the conclusion upon which the decree must rest, namely, that the premises ought to be closed for a period long enough to end the probability of a recurrence of their unlawful use. We are the more content with this conclusion, since it is still within the power of the district court to permit the premises to be occupied or used upon the giving of a bond with sufficient surety in the amount and upon the conditions prescribed by the statute."

See, also, *Schlieder v. U. S., supra; U. S. v. Pepe* (C. C. A.) 12 Fed. (2d) 985; *State ex rel. Att'y Gen. v. Thekan, supra;* 2 Woollen and Thornton, Law of Intoxicating Liquor, sec. 586.

In the case at bar there has not been, as yet, any hearing as to the form and scope of the equitable relief. This appeal

presents merely the questions raised by the defendant's demurrer to the complaint. Upon further proceedings herein, the usual equitable principles and considerations applicable in such actions are to be followed, and, in that event, relief decreed within the limitations of those principles and considerations will not constitute the enforcement of a forfeiture or an unauthorized exercise of jurisdiction. The order appealed from must be affirmed.

Respondent's brief does not comply with Rule 9 of this court, requiring a synopsis or brief résumé of the argument, with page references, on the front fly-leaves of every brief. Consequently, in view of Rule 44, no costs can be taxed for printing that brief.

*By the Court.*—Order affirmed.