**PORTER, Price Administrator, v. LAJEUNESSE.**

**Civil Action No. 5384.**

District Court, D. Massachusetts.

Oct. 17, 1946.

James J. Brennan, Chief Enforcement Atty., and Benjamin Kaplan, Enforcement Atty., O.P.A., both of Boston, Mass., for plaintiff.

Widett & Kruger and Joseph Kruger, all of Boston, Mass., for defendant.

WYZANSKI, District Judge.

In this action the Administrator of the Office of Price Administration seeks a judicial order suspending defendant's license [issued under the Administrator's Licensing Order No. 1 (8 F.R. 13240)] to sell meat and certain other commodities at retail. The Administrator relies upon the provisions of § 205 (f) (2) of the Emergency Price Control Act of 1942, 56 Stat. 23, as amended by § 13 of the Price Control Extension Act of July 25, 1946, c. 671, 50 U.S.C.A.Appendix, § 925 (f), the terms of which are printed in the margin.[1]

§ 205 (f) imposes upon this Court the duty to determine first whether defendant after having received a warning notice has violated the Emergency Price Control Act, and second whether the violation in question was wilful or the result of a failure to take practicable precautions; and, if such determinations are

[1] [1942 Act] "(2) Whenever in the judgment of the Administrator a person has violated any of the provisions of a license issued under this subsection, or has violated any of the provisions of any regulation, order, or requirement under section 2 or section 202(b), or any of the provisions of any price schedule effective in accordance with the provisions of section 206, which is applicable to such person, a warning notice shall be sent by registered mail to such person. If the Administrator has reason to believe that such person has again violated any of the provisions of such license, regulation, order, price schedule, or requirement after receipt of such warning notice, the Administrator may petition any State or Territorial court of competent jurisdiction, or a district court subject to the limitations hereinafter provided, for an order suspending the license of such person for any period of not more than twelve months. If any such court finds that such person has violated any of the provisions of such license, regulation, order, price schedule, or requirement after the receipt of the warning notice, such court shall issue an order suspending the license to the extent that it authorizes such person to sell the commodity or commodities in connection with which the violation occurred, or to the extent that it authorizes such person to sell any commodity or commodities with respect to which a regulation or order issued under section 2, or a price schedule effective in accordance with the provisions of section 206, is applicable; but no such suspension shall be for a period of more than twelve months. For the purposes of this subsection, any such proceedings for the suspension of a license may be brought in a district court if the licensee is doing business in more than one State, or if his gross sales exceed $100,000 per annum."

[1946 Amendment] "The third sentence of paragraph (2) of section 205(f) of the Emergency Price Control Act of 1942, as amended, is amended to read as follows: 'If any such court finds that such person has violated any of the provisions of such license, regulation, order, price schedule, or requirement after the receipt of the warning notice, such court shall issue an order suspending the license to the extent that it authorizes such person to sell the commodity or commodities in connection with which the violation has occurred or to the extent that it authorizes such person to sell any commodity or commodities with respect to which a regulation or order issued under section 2, or a price schedule effective in accordance with the provisions of section 206, is applicable; but no suspension shall be for a period of more than twelve months, and if the defendant proves that the violation in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation, then in that event no suspension shall be ordered or directed.' "

in the affirmative, the further duty to issue an order suspending defendant's OPA license for a period not more than 12 months.

Defendant has moved to dismiss the proceeding on the ground that this Court lacks jurisdiction because § 205 (f) (2) calls upon this Court to exercise functions which are essentially legislative or administrative and which are therefore beyond the capacity of this Court under Article III of the United States Constitution. Reliance is placed upon the familiar doctrine that a Court established solely under Article III of the United States Constitution can exercise only judicial and never administrative functions. Stated in another way, defendant's view is that a proceeding for the revocation or suspension of a license is inherently administrative and cannot be subsumed under the classification of judicial "cases" and "controversies" to which by Article III of the United States Constitution this Court is limited.

But that view is unsound as shown by an analysis of the essential nature of a suspension proceeding and as shown by an examination of the authorities.

A proceeding to suspend or revoke a license involves two types of questions. The first type raises issues of fact; for example, has the licensee violated the terms of his license, and, if so, was his violation deliberate and avoidable by taking practicable precautions? Such questions of fact do not differ from those tried every day in the courts. The second type of question relates to the appropriate remedy where the facts have disclosed violations of law. In cases arising under § 205 (f) (2) the question of the appropriate remedy is narrowed by the statute to one inquiry; that is, during what part of the ensuing year shall a deliberate second offender be denied the right to carry on his business. Such a question invites the exercise of a judicial discretion even more limited than that exercised by a judge when he decides whether to issue an injunction and, if so, how broad an injunction, against a respondent in an equity case who has been found to have violated a regulation or law. Indeed such a question calls for consideration of only such factors as were involved in cases arising under the so-called padlocking provisions of Section 22 of the former National Prohibition Act of October 28, 1919, c. 85, 41 Stat. 305, 314, 27 U.S.C.A. § 34. In such cases, as Murphy v. United States, 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446, and Grosfield v. United States, 276 U.S. 494, 48 S.Ct. 329, 72 L.Ed. 670, 59 A.L.R. 620, illustrate, United States Courts were empowered to order, and did order, that premises which had been used for the unlawful manufacture or sale of liquor should not be occupied or used for one year thereafter. To be sure, those liquor cases were examples of injunctions against operating *premises* and this case is an example of an injunction against operating a *business,* but the difference is of no significance in considering whether the proceeding is a "case" or "controversy."

The analysis that I have just made of the characteristics of a proceeding for the revocation or suspension of a license is fully supported by Ernst Freund, Administrative Powers Over Persons and Property, pp. 117–128. At page 121 Professor Freund says:

"Quite commonly the ground of revocation [of a license] is an illegal act or conduct, or a violation of some specific requirement, not amounting to a crime: a contravention to rules or orders or terms of licenses, or fraud; in case of insurance companies, misleading statements, violation of standard provision requirements, failure to maintain reserves, or non-payment of taxes; in case of associations, the pursuing of forbidden objects. *These are facts capable of being adjudicated by a court, and the revocation proceeding might therefore be judicial;* in most cases, however, the proceeding is administrative, although not infrequently with provision for judicial review."

Historically, judicial determinations of this type of controversy go back at least to the reign of Queen Anne. In a statute enacted in the province of Massachusetts, St. 1710–1711, p. 266 (9 Anne c. 8,) cited in

Sawyer v. State Board of Health, 125 Mass. 182, 187, 188, it was provided that a court and jury should decide cases involving the revocation of slaughterhouse licenses on account of alleged abuses of the licenses. The quaint language of the law provided:

"When and so often, from time to time, as it shall appear any house or place assigned or to be assigned to and for the exercising of either of the aforesaid trades or mysteries, to become a nuisance by reason of offensive and ill stenches proceeding from the same, or otherwise hurtful to the neighborhood, it shall and may be lawful, to and for the court of general sessions of the peace within the county, to cause inquiry to be made thereinto by a jury, and to suppress such nuisance by prohibiting and restraining the further use thereof for the exercise of either of the aforesaid trades or mysteries, under a fine," &c.

The example just cited is to be sure the case of the revocation of a license on the ground that the licensee is alleged to have become a public nuisance. But though the ground differs from a case like the present where the licensee is alleged to have violated the terms of his license and to have committed a crime by disobeying an OPA regulation, it can hardly be maintained that the former ground does and the latter ground does not present a justiciable controversy.

Of course, the conclusion that questions of revocation or suspension of a license may be treated by the legislature in one statute as "cases" or "controversies" suitable for adjudication by a judge in no way implies that they may not be treated by the legislature in another statute as administrative problems suitable for resolution by an agency in the executive branch of the government. The questions are ordinarily susceptible of treatment in either manner, according to the choice of the legislators; and it so happens that in the majority of federal statutes Congress has selected the second of the two possible courses. See Landis, The Administrative Process, p. 117.

A word must be said about two cases upon which defendant places some reliance.

Federal Radio Commission v. General Electric Co., 281 U.S. 464, 50 S.Ct. 389, 74 L.Ed. 969, recognized that if a court in reviewing an administrative agency's denial of a license, had the power to settle the controversy by issuing the license, then that Court itself was acting as an administrative agency and was not exercising judicial functions of the type contemplated by Article III of the United States Constitution, or of the type reviewable in the Supreme Court of the United States. The distinction between that case (where a court was given power to issue a licensed) and this case (where a court is asked to suspend a license) is that there, but not here, the court was called upon to consider the type of issue which traditionally has belonged to the executive branch of the government. Questions of public convenience and necessity and questions of that nature, if they are in any respect judicial, are much less judicial than they are practical, if not political. While it may be easy to point to some theoretical resemblances between the procedure for granting a license and the procedure for revoking it, those resemblances are less important than this practical difference: a revocation (at any rate in the situations where judicial action is properly invoked) is premised on failure of the licensee to meet specific objective standards; a grant of a license is often premised not merely on conformity to specific objective standards, but also on appeal to general considerations, some objective but political, others subjective and remaining almost latent in the minds of the licensing authorities.

▮ Usually the granting, the revoking and the suspending of a license are all governed in part by stated rules. However, whereas the granting of a license customarily also involves an element of free choice, the revocation or suspension of a license customarily depends not on free choice but on a restricted discretion (which, if it were not for the play on words which would be involved, I might have called "a

judicial discretion"). Hence, with exceptions not now material, licensing cannot be, but revocation or suspension can be, entrusted to a court created exclusively under Article III.

The case of Administrator of Office of Price Administration v. Chook, Mass., 68 N.E.2d 662, 665, also cited by defendant, merely holds that a proceeding under § 205 (f) (2) is not "cognizable under the general principles of equity jurisprudence" of the Commonwealth of Massachusetts. The Massachusetts court has authoritatively declared that this type of action is not what Massachusetts regards as an equity action. But cf. Grosfield v. United States, 276 U.S. 494, 48 S.Ct. 329, 72 L.Ed. 670, 59 A.L.R. 620. However, the Massachusetts court has not intimated and I see no reason to believe that it would conclude that this type of action is not like many other actions which the federal courts have regarded as Article III "cases" or "controversies."

In reaching the result that this Court has jurisdiction over an action to suspend a license under § 205 (f), I find myself in accord with the implied premises of a number of district court cases of which it will be sufficient to mention Bowles v. L. D. McClean Co., D.C.N.Cal., 61 F.Supp. 454 and Bowles v. Dietter, D.C.Conn., 61 F.Supp. 880.

Motion denied.