## GREGG v. WINCHESTER et al.

### No. 11861.

United States Court of Appeals
Ninth Circuit.

Feb. 14, 1949.

As Amended March 1, 1949.
Rehearing Denied March 31, 1949.

Donald J. Dunne and Wood, Crump, Rogers Arndt & Evans, all of Los Angeles, Cal., for appellant.

Oliver O. Clark and Robert A. Smith, both of Los Angeles, Cal., for appellees.

Before MATHEWS and STEPHENS, Circuit Judges, and DRIVER, District Judge.

STEPHENS, Circuit Judge.

J. D. Gregg, appellant, owns 115 acres of land within the boundaries of the City of Los Angeles, State of California, from which he proposes to excavate and produce rock, sand and gravel commercially. There are zoning laws of the city affecting and limiting the operation of the business mentioned and, in defined circumstances, a city variance permit may be granted after a public hearing. Gregg's land lies within the area in which the rock-sand-gravel business is prohibited except through permit, and a permit was regularly issued to him and is presently in effect.

On November 14, 1947, the instant suit in equity was filed in United States district court on behalf of a number of named persons and alleging that all others similarly situated will be injured by Gregg's proceeding with the said operation, praying that the city action in granting the variance permit be held void, that the city be restrained from further action of the kind, and that Gregg be enjoined from proceeding to take rock, sand and gravel from the premises in suit. A temporary restraint issued against the city and Gregg made a motion to dissolve it. The motion was denied and an order temporarily enjoining the city and Gregg issued as of December 9, 1947, from which Gregg appeals.

On November 22, 1946, an action was filed and is now pending in the California state court entitled Wheeler et al. v. Gregg et al. (City of Los Angeles) naming as plaintiffs twenty-six persons, owners of land within the suit area and is on behalf of all persons of like situation. [See 203 P.2d 37] The complaint is practically a duplicate of the one in our case. The issues are the same; the relief asked for is the same; the members of the class similarly situated include the named plaintiffs of the federal action; and the attorneys are the same. See Hill v. Martin, et al., 296 U.S. 393, 56 S.Ct. 278, 80 L.Ed. 293; Mills et al. v. Provident Life & Trust Co. of Philadelphia, 9 Cir., 100 F. 334, 347.

The case was tried on its merits and the judgment went for defendant with certain requirements being prescribed for the operation of the business. The case is now on appeal to the state supreme court.

The appeal in the instant case is based upon twelve "specifications of errors" and we set them out in the margin.[1] It will be

---

[1] "Specification of Errors. A. The Court erred in granting Appellees a preliminary injunction in this:

"1. That the Complaint fails to state a cause of action;

"2. That the Court has no jurisdiction

noticed that the third specification goes to the jurisdiction of the court on the ground that there is no federal question in the case, and that the twelfth specification, in effect, is that even should questions of rights under the Fifth and Fourteenth amendments to the United States Constitution be in the case, jurisdiction should have been declined because of the pendency of the California state court action. We go at once to the question last mentioned.

Under the dual sovereignty recognized in our federal and state constitutions, with the state and federal courts of equal dignity possessing coordinate jurisdiction over many subjects of litigation, confusion and conflict was sure to develop. The establishment of federal courts exercised the people's fears that they would absorb a great deal of the local state courts' business. In some instances, federal judges assumed erroneously their own superior station over local state judges and courts, and in other instances state courts assumed unauthorized powers over judgments and processes of federal courts. It is altogether a remarkable testimonial to the good sense of the American lawyer, both in his capacity as a judge and as an advocate that, sensing the malady as a serious one, he readily discovered and applied the remedy.

The remedy consisted merely of recognizing exclusive jurisdiction in the court first acquiring jurisdiction of any action. It is often referred to as the rule of comity or necessity. Action under this principle held the two systems from extensive and calamitous collisions but its application was not always favored nor was it free from difficulties. Chief Justice Taft adverted to the problem in admirably simple language in Ponzi v. Fessenden, 258 U.S. 254, at 259-260, 42 S.Ct. 309, 310, 66 L.Ed. 607, 22 A.L. R. 879. The Chief Justice said:

"We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory. It would be impossible for such courts to fulfill their respective functions without embarrassing conflict unless rules were adopted by them to avoid it. The people for whose benefit these two systems are maintained are deeply interested that each system shall be effective and unhindered in its vindication of its laws. The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction over the same persons and things in actual litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure. * * *

because no diversity of citizenship is shown;

"3. That the Court has no jurisdiction because no Federal question is presented;

"4. That the case does not arise under the Constitution of the United States, or under a Federal statute;

"5. That the granting of the permit to Gregg does not constitute an unconstitutional taking of property without just compensation;

"6. That the granting of the permit to Gregg does not constitute a denial to Appellees of due process of law;

"7. That the alleged controversy is not a genuine and present one under the Constitution of the United States, but is merely conjectural;

"8. That the alleged cause of action is essentially one to enjoin the commission of an alleged nuisance by Gregg and, there being no diversity of citizenship, is solely within the jurisdiction of the State Court;

"9. That where the operation of a business is not a nuisance per se, an order or decree of Court should not enjoin more than the specific things which constitute the nuisance and should never go beyond the requirements of the particular case;

"10. That there can be and as a matter of law is no estoppel with reference to the granting of the conditional use permit to Gregg, as alleged in the complaint;

"11. That the wisdom or expediency of granting the permit was for the City Council to decide and is not subject to judicial review and does not present a Federal question;

"12. The District Court should have declined to take jurisdiction both under the provisions of Sec. 265 of the Judicial Code, 28 U.S.C.A. 379, and under the doctrine of comity, because of the prior judgment of the Superior Court of the State of California, in and for the County of Los Angeles (an appeal from said judgment being now pending in the Supreme Court of California) denying to plaintiffs in a representative suit (brought on behalf of all persons similarly situated, including the appellees herein) the identical relief sought in this proceeding." [See 203 P.2d 37]

"The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or *property,* [our emphasis] must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose. This principle is stated by Mr. Justice Matthews in Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390, as follows:

" 'The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States it is something more. It is a principle of right and of law, and therefore, of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they coexist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty.'

"The Heyman case concerned property, but the same principle applies to jurisdiction over persons as is shown by the great judgment of Chief Justice Taney in Ableman v. Booth, 21 How. 506, 16 L.Ed. 169, quoted from, and relied upon, in Covell v. Heyman."

See also the admirable article on the subject by Charles Warren in the January 1930 issue of Harvard Law Review (Vol. XLIII No. 3).

After jurisdiction has been assumed by one court of coordinate jurisdiction the parties to the suit may not thereafter be permitted to maintain a suit for the same relief in the other court of coordinate jurisdiction. It would, of course, be highly illogical and result in diverse decisions to countenance such procedure.

After judgment in one jurisdiction, all parties to the action are bound by the judgment under the principle of res judicata and whether, in our case, the judgment in the state court is res judicata of the federal action out of which this appeal lies, is highly interesting but we do not treat of it for the reason it has not been raised.[2]

The comity rule however is asserted by appellant Gregg as controlling. Gregg's contention is that the res in both suits is one and the same and that both are suits in rem or suits quasi in rem. The res of the suits under consideration is the right of an owner, any owner, of the property in suit to take rock, sand and gravel commercially therefrom in accordance with the ordinances and regulations of the City of Los Angeles as they exist, and it includes the question of the legality of such ordinances and regulations.

It is claimed by plaintiffs in both actions that the taking and the ordinance and regulations of the city permitting the taking, contravene the constitution of the United States. The state court has issued its con-

---

[2] In connection with the matter of res judicata the case of Supreme Tribe of Ben-Hur v. Cauble et al., 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673, is of more than passing interest. We quote from 255 U.S. page 367, 41 S.Ct. 342: "If the federal courts are to have the jurisdiction in class suits to which they are obviously entitled, the decree when rendered must bind all of the class properly represented. The parties and the subject-matter are within the court's jurisdiction. It is impossible to name all of the class as parties, where, as here, its membership is too numerous to bring into court. The subject-matter included the control and disposition of the funds of a beneficial organization, and was properly cognizable in a court of equity. The parties bringing the suit truly represented the interested class. If the decree is to be effective and conflicting judgments are to be avoided, all of the class must be concluded by the decree. * * *"

See Hansberry et al. v. Lee et al., 311 U.S. 32, 41–42, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741; Rodman et al. v. Rogers et al., 6 Cir., 109 F.2d 520.

sidered judgment exactly contrary to such claims. It is quite apparent that a contrary judgment by the federal court would not be a mere personal judgment in favor of or against the named plaintiffs and defendants in the cases but would be a contrary finding affecting the res. One judgment of a court of coordinate jurisdiction would have decreed the applicable zoning regulations of the City of Los Angeles wholly legal and enforceable under which the owner of the property could legally take sand, rock and gravel commercially from the property, and the other court of coordinate jurisdiction would have negatived every element of such decree.

The rule so clearly stated by Chief Justice Taft and contended for here is most necessary in cases like those we have before us where the issue is not alone a difference between persons, as in a suit on contract. Here the issue, common to both cases, affects the res, as do cases in rem. We do not think it profitable to here discuss the origin, principles or development of cases falling within the expressions "in rem" or "quasi in rem." A full and interesting treatise on the subject may be found in Title and Document Restoration Co. v. Kerrigan, etc., 150 Cal. 289, 88 P. 356, 8 L.R.A.,N.S., 682, 119 Am.St.Rep. 199, the case which upholds the legislation providing legal procedure for settling land titles after official records had been destroyed by the great San Francisco fire of 1906. Therein provision was made for quieting title against the world after publication and not by or through direct personal service.

In the prohibition era many cases held that judgments requiring buildings to be locked up for specified periods are judgments in actions quasi in rem. See Hill et al. v. United States, 59 App.D.C. 381, 44 F.2d 889; Grosfield v. United States, 276 U.S. 494, 48 S.Ct. 329, 72 L.Ed. 670, 59 A.L.R. 620; People's Gaslight & Coke Co. v. City of Chicago, C.C., 192 F. 398.

It has been held that decrees quieting title, validating bonds, and decrees of probate courts are in the nature of judgments in rem. They cannot be attacked in other actions. See Toucey v. New York Life Insurance Co., 314 U.S. 118, 135-136, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967; U. S. v. Bank of New York Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331; Title and Document Restoration Company v. Kerrigan, etc., 150 Cal. 289, 307, 88 P. 356, 8 L.R.A., N.S., 682, 119 Am.St.Rep. 199.

The case of Burford et al. v. Sun Oil Co. et al., 319 U.S. 315, 63 S.Ct. 1098, 1107, 87 L.Ed. 1424, is to the point of the instant case. The case arose over an attempt to use federal jurisdiction in the regulation of producing oil from the ground in Texas. The opinion is complete in citation of authority. We quote the concluding paragraph and the deciding sentence:

"The State provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commission's decisions in the state courts is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here. Cf. Matthews v. Rodgers, 284 U.S. 521, 52 S Ct. 217, 76 L.Ed. 447. Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand.

"The decision of the Circuit Court of Appeals is reversed and the judgment of the District Court dismissing the complaint is affirmed for the reasons here stated."

So it is with the zoning regulations of the City of Los Angeles. The city, under delegated state authority, has enacted an elaborate zoning system. Of course, every portion of this system is subject to attack in the state courts wherein its constitutionality under both state and federal constitutions can be tested. Where the attack has been made in a state court, conflict and confusion is avoided and all parties are fully assured of due judicial process by following through the state's trial and appellate courts and thence to the United States Supreme Court on all federal questions.

Up to this point we have said nothing about Section 265 of the Judicial Code (28

U.S.C.A. § 379),[3] formerly Section 720, Revised Stat. U.S., which prohibits stays or injunctions issuing out of federal courts to state courts except in bankruptcy matters.

In the instant case the federal court has issued no process directly enjoining or staying any state court process, but the federal court's order, appealed from, effectively interferes with the enforcement of the state court's judgment. The federal court order is based upon a legal view of the city zoning ordinance directly opposite to that expressed in the state court's decree and prevents the property owner from enjoying the intent of such decree.

It has been held that Section 265 should be liberally construed. Much can be made of the contention that the action of the federal court was very effectively an injunction against the enforcement of the state court's judgment. See Toucey v. New York Life Insurance Co., 314 U.S. 118, 136, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967; Riggs v. Johnson County, 6 Wall. 166, 73 U.S. 166, 18 L.Ed. 768; Moran v. Sturges, 154 U.S. 256, 14 S.Ct. 1019, 38 L.Ed. 981; Harrison et al. v. Triplex Gold Mines Ltd. et al., 1 Cir., 33 F.2d 667. However, we think it is so clear on the doctrine of comity that the federal court should have declined to take jurisdiction of the case filed with it that it would be purposeless to go further with the claimed application of the statute.[4]

The order appealed from is set aside and the district court is instructed to dismiss the action.

Reversed and remanded.

**On Petition for Rehearing.**

The petition for rehearing is denied.

In disposing of the petition for rehearing, we deem it proper to comment upon the point made in the petition that class suits in California do not bind persons falling within the class who are not and do not make themselves parties to the action or who do not accept benefits of the litigation. We do not base our decision on a contra premise.

It is true that in our written opinion we have stressed the fact that the plaintiffs in the federal case do fall within the class for which the state court case assertedly is maintained; that the attorneys are the same in each case; that the federal case followed soon after the judgment against the plaintiffs in the state case; that the attack upon the constitutionality of the city zoning system is common to both suits.

The combination of these circumstances, it seems to us, demonstrates that a conflict of holdings as to the legality of the city zoning ordinances may result (and indeed has resulted) in confusion in the administration of enforcing the ordinances. The ordinances cannot be enforced against the will of the plaintiffs in the state case as the state court judgment decrees, and enforcement be prohibited in accordance with the will of the plaintiffs in the federal case as the order herein appealed from decrees.

Each set of plaintiffs may have their complaints adjudicated in the state courts in the same or different state cases. The district judge thought the matter of filling the excavations resulting from taking sand and gravel from the premises in suit could not be provided for by the state courts of appeal in the state court case already tried.

---

[3] It is well to note that, although not repealed, § 379 was omitted from new Title 28 U.S.C.A., having been superseded by § 2283 thereof.

[4] It is fair to the district judge presiding to say that he understood the clash of jurisdictions and in a writing designated an order proposed that action by the district court upon the main issues should be held in abeyance pending final disposition of the state court case conditioned upon Gregg's posting a $50,000 bond as a guarantee that excavation pits should be filled. The judge was of the opinion that the state Supreme Court was without power to protect the plaintiffs in this particular.

We express no opinion as to the effect of such proposed privilege or upon the state court's power or whether the possession of such power by the state court or the lack of it would affect our decision, since no points touching these matters have been presented in this appeal. It is clear that all parties to the appeal were interested only in the broader aspects of the case and in the circumstances we are convinced that we should hold our opinion to the subject of comity between the state and federal courts.

If this is true, the matter may be well protected by the filing of a case in the state court by the plaintiffs in the instant case. If such action were taken, the real underlying issue of both cases, the constitutionality of the ordinance, would pass through the same state Supreme Court and on to the Supreme Court of the United States, and all conflict of jurisdictions be avoided.

In line with the case of Burford et al. v. Sun Oil Co., et al., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, cited in our main opinion, is the very recent case of Stainback et al. v. Mo Hock Ke Lok Po et al., 69 S.Ct. 606, 614, a case in which an Hawaiian territorial act was questioned. District Judge McLaughlin, in considering a motion for a temporary injunction, made a statement from which the Supreme Court quoted, as follows:

" '* * * [The Act] carries no criminal penalties for infractions. Enforcement is in equity in the circuit courts of the Territory. Plaintiffs have no reason to fear a court of equity, and there is every reason to believe that their constitutional rights would be fully protected in the equity courts of the Territory and that an appeal, if need be, eventually could be had to the United States Supreme Court.' "

The Supreme Court continued with its statement: "The statement [of the district judge] applies as well as to the final injunction. Entirely aside from the question of the propriety of an injunction in any court [Note 28: See Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95, 55 S. Ct. 678, 79 L.Ed. 1322], territorial like state courts are the natural sources for the interpretation and application of the acts of their legislatures and equally of the propriety of interference by injunction. [Note 29: Waialua Agr. Co. v. Christian, 305 U.S. 91, 108, 59 S.Ct. 21, 83 L.Ed. 60; Beal v. Missouri Pacific R. Corporation, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577; Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Burford v. Sun Oil Co., 319 U.S. 315, 333, note 29, 63 S.Ct. 1098, 87 L.Ed. 1424; Meredith v. City of Winter Haven, 320 U.S. 228, 235, 64 S.Ct. 7, 88 L. Ed. 9. Compare Spector Motor Co. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L. Ed. 101.] We think that where equitable interference with state and territorial acts is sought in federal courts, judicial consideration of acts of importance primarily to the people of a state or territory should, as a matter of discretion, be left by the federal courts to the courts of the legislating authority unless exceptional circumstances command a different course."

In the circumstances, we think the federal court should have declined to take jurisdiction.